## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA

LM INSURANCE CORPORATION, as
subrogee of JEREMY WILLIAMS
175 Berkeley Street                    Case No: 1:21-cv-2598
Boston, MA 02116

                       Plaintiff,      **<u>JURY TRIAL</u>**

       v.

GREE USA, INC.
4195 Chino Hills Parkway #1026
Chino Hills, CA 91709

and

MJC AMERICA, LTD.
20035 East Walnut Drive North
City of Industry, CA 91789

and

GREE ELECTRIC APPLIANCES, INC.
OF ZHUHAI
Jinji Road West
Qianshan Zhuhai Guang Dong, 51907 China

and

HONG KONG GREE ELECTRIC APPLIANCE
SALES, LTD.
Unit 2612 Miramar Tower
132 Nathan Road
Tsin Sha Tsui Kowloon, Hong Kong

                         Defendants

## COMPLAINT

1. LM Insurance Corporation ("LM") is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 175 Berkeley Street, Boston, Massachusetts, which, at all times material hereto, was authorized to and did regularly and systematically write property insurance in numerous states.

2. Defendant Gree USA, Inc. ("Gree USA") is a California corporation with its principal place of business located at 4195 Chino Hills Parkway #1026, Chino Hills, California 91709.

3. Defendant MJC America, Ltd. ("MJC"), is a California corporation with its principal place of business located at 20035 East Walnut Drive North, City of Industry, California 91789.

5. Defendant, Gree Electric Appliances, Inc. of Zhuhai ("Gree China") is a Chinese corporation with its principal place of business located at Jinji Road West, Qianshan Zhuhai Guang Dong, 51907 China.

6. Defendant, Hong Kong Gree Electric Appliances Sales, Ltd. ("Gree Hong Kong"), is a Chinese corporation with its principal place of business located at Unit 2612 Miramar Tower, 132 Nathan Road, Tsin Sha Tsui Kowloon, Hong Kong.

## PERSONAL JURISDICTION

7. This case arises out of the sale and distribution of two million, five hundred thousand (2,500,000) dehumidifiers that were designed and manufactured by Gree Electric Appliances, Inc. of Zhuhai ("Gree China") and exported into the United States by Gree China's wholly owned subsidiary, Hong Kong Gree Electric Appliance Sales, Ltd. ("Gree Hong Kong").

8. Despite its substantial sales of products worldwide, Gree China had relatively small sales in the United States before 2010.

9. As part of its plan to penetrate the US consumer market, Gree China needed a brand name that major US retailers were familiar and comfortable with, so that these retailers would purchase products manufactured by Gree China.

10. Starting in 2008/2009, Gree China, for the purpose of increasing sales in the United States and for the purpose of associating itself with a brand familiar to US retailers, approached MJC in California about MJC selling and promoting Gree products to US retailers, including Home Depot, Sears, Lowe's and other similar retail chains.

11. Starting in 2010, Gree China and MJC agreed to brand dehumidifiers under the name "SoleusAir powered by Gree" as a test case to determine if MJC's Soleus brand could assist Gree China in penetrating the US market.

12. From January of 2010 until October of 2010, Gree China exported at least 421,000 dehumidifiers bearing the "SoleusAir powered by Gree" brand to MJC in California for distribution to US retailers, including retailers in Indiana.

13. In September of 2010, Madam Dong, the President and CEO of Gree China and Gree Hong Kong, along with other employees of Gree China and Gree Hong Kong, traveled to California for the purposes of meeting with MJC's officers and to tour US retailers.

14. As a result of the September 2010 meeting in California, Gree China and Gree Hong Kong entered into a memorandum of understanding concerning the formation of a joint venture between Gree Hong Kong and MJC, whereby Gree Hong Kong would own 51% and MJC would own 49% of a company to be called Gree USA which would market, sell, and distribute products made by Gree China in the United States.

15. In 2011, Gree China manufactured 274,691 dehumidifiers that it sold via Gree Hong Kong to MJC and Gree USA, which MJC and Gree USA distributed to retailers throughout the United States, including Indiana.

16. In 2012, Gree China manufactured 845,513 dehumidifiers that it sold via Gree Hong Kong to MJC and Gree USA, which MJC and Gree USA distributed to retailers throughout the United States, including Indiana.

17. In 2013, Gree China manufactured 285,596 dehumidifiers that it sold via Gree Hong Kong to MJC and Gree USA, which MJC and Gree USA distributed to retailers throughout the United States, including Indiana.

18. In total, from 2010 through 2013, Gree China manufactured and sold 1,840,000 dehumidifiers via Gree Hong Kong to MJC and Gree USA, two California corporations, which MJC and Gree USA distributed to retailers throughout the United States, including Indiana.

## SUBJECT MATTER JURISDICTION AND VENUE

19. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) as plaintiffs are citizens of a different state than all named defendants and the amount in controversy, for each plaintiff, is in excess of $75,000.00, exclusive of interests.

20. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 as the events giving rise to plaintiffs' claims occurred in this judicial district.

## THE FIRE

21. At all times material hereto, Jeremy Williams was the owner and resident of a house located at 5255 North Park Avenue, Indianapolis, Indiana.

22. At all times material hereto, plaintiff LM provided property insurance to Jeremy Williams for her interests in the property, including the contents and the loss of use.

23. Prior to January 7, 2020, Jeremy Williams had a Gree manufactured dehumidifier in his residence.

24. The dehumidifier in the Williams residence (hereinafter the "Williams dehumidifier") had been manufactured and distributed by the defendants.

25. On January 7, 2020 the Gree dehumidifier electrically failed and started a fire.

26. The fire caused smoke, flame and water damage to the real and personal property of the Williams' as well as loss of use of said property.

27. Pursuant to the policy of insurance between LM and Mr. Williams, LM has partially compensated them for their losses in an amount in excess of $300,000.00

28. LM is subrogated, to the extent of its payments, for the interests of Jeremy Williams.

## GREE CHINA'S AND GREE HONG KONG'S FALSIFICATION OF UL CERTIFICATION

29. Gree China and Gree Hong Kong represented to MJC, Gree USA, retailers and the general public that its dehumidifiers were certified by Underwriter's Laboratory ("UL") and that the design and materials used in the manufacturing of its dehumidifiers complied with UL Standard 474 and Standard 94.

30. As part of the UL certification process, Gree China and Gree Hong Kong made representations to UL that the plastics used in the construction of its dehumidifiers complied with the fire ratings in UL 94.

31. UL 94 requires that consumer electric products, including dehumidifiers, use plastics that have specific burn and flame rates in order to prevent, reduce and limit the risk of fire hazards.

32. In its application for UL certification under UL 474, Gree China represented that the materials and plastics used to manufacture and construct its dehumidifiers were compliant with UL 94.

33. Gree China and Gree Hong Kong made these false and misleading representations knowing that the materials and plastics used to manufacture and construct its dehumidifiers were not compliant with UL 94's burn and flame rate requirements.

34. Gree China and Gree Hong Kong made these false and misleading representations knowing that UL was unable to independently conduct the burn/flame resistance testing set forth in UL 94, and that UL relied on Gree China's representations in the certification documents stating that Gree China had these tests performed and the dehumidifiers complied with UL 94.

35. US retailers will not purchase and sell dehumidifiers that are not certified by UL.

36. US consumers will not and cannot purchase dehumidifiers that are not certified by UL because US retailers will not purchase or sell non-UL listed electric products.

37. Gree China's and Gree Hong Kong falsification of the UL Certification process was done for the purposes of misleading UL into improperly certifying the dehumidifiers and, in so doing, Gree China and Gree Hong Kong defrauded and misled US retailers and consumers into purchasing its dehumidifiers on the false belief that the dehumidifiers were designed and manufactured in compliance with UL standards.

**GREE CHINA'S KNOWING SALE OF DEHUMIDIFIERS AFTER IT HAD ACTUAL KNOWLEDGE THAT ITS DEHUMIDIFIERS WERE DEFECTIVLY DESIGNED AND MANUFACTURED**

38. From 2008 until the present time, Gree China was an original equipment manufacturer for General Electric branded dehumidifiers.

39. In late 2010, GE instructed Gree China to make certain design changes and product improvements to GE branded, Gree China manufactured dehumidifiers.

40. The design changes were mandated by GE due to product failure issues with the dehumidifiers, including overheating issues and fires.

41. The GE mandated design changes required a) the removal of electrical terminal sleeves that used PVC materials; b) the use of UL 94 V0 rated plastics for structural components of the dehumidifiers, including the fan shroud base, center support and external cabinet; and c) the use of UL 94 flammability rated materials for the terminal cover.

42. Starting in its January 2011 production run, Gree China made the above requested changes for GE dehumidifiers.

43. Gree China did not make the GE mandated design changes for dehumidifiers manufactured under other brand names, including the dehumidifiers that it was manufacturing and selling to Gree USA and MJC.

44. Gree China did not make the GE mandated design changes despite actual knowledge that the design and materials defects identified by GE were causing Gree China's dehumidifiers to fail, overheat, and catch on fire.

45. Since January of 2011, Gree China manufactured and sold approximately 1,400,000 dehumidifiers to Gree USA and MJC in California that Gree China knew were defective because they did not incorporate the GE mandated design and materials changes.

**GREE CHINA'S FALSIFICATION OF UL CERTIFICATION AND SALE OF A KNOWLINGLY DEFECTIVE AND UNREASONABLY DANGEROUS PRODUCT IS IMPUTED TO GREE USA**

46. As is set forth in detail above, the majority owner of Gree USA is Gree Hong Kong, a wholly owned subsidiary of Gree China.

47. Gree China's knowledge of the UL fraud and Gree China's knowing sale of its defective and unreasonably dangerous products is imputed to Gree USA because officers and directors of Gree China were and are officers and directors of Gree USA.

48. The common officers and directors of Gree China and Gree USA knew that the dehumidifiers were not compliant with UL standards as they had approved the GE design changes and they also approved the continued manufacture and sale of dehumidifiers for other brands without the GE mandated design changes.

**MJC AND GREE USA'S KNOWLEDGE OF THE DEFECTS AND GREE CHINA'S AND GREE HONG KONG'S ATTEMPT TO SUPPRESS AND DELAY REPORTING THE DANGEROUS PRODUCT DEFECTS TO THE CONSUMER PRODUCT SAFETY COMMISSION**

49. In July of 2012, after receiving an unusually high number of consumer complaints, after having witnessed a YouTube video showing a SoleusAir by Gree dehumidifier in flames, and after being contacted by the United States Consumer Product Safety Commission ("CPSC") to respond to a consumer complaint of a dehumidifier that overheated and emitted smoke, MJC became concerned that the Gree China manufactured dehumidifiers were fire safety hazards.

50. In response to these concerns, Charlie and Jimmie Loh, the owners of MJC and officers and directors of Gree USA contacted Gree China to express their concerns and to request technical and engineering assistance.

51. From July of 2012 until September 2012, Gree China and Gree Hong Kong responded to the concerns expressed by the Lohs by stating that the product was not defective and was not causing fires despite Gree China's actual knowledge of the falsified UL certification and the GE mandated design changes.

52. In September of 2012, employees of Gree China and Gree Hong Kong, at the direction of Madam Dong, traveled to California to meet with the Lohs and others employees of MJC and Gree USA for the purposes of discussing the dehumidifier safety issues.

53. During the September 2012 meeting, Larry Lam, an employee of Gree Hong Kong, and an engineer known as Ju from Gree China, informed the Lohs that Gree China and Gree Hong Kong were aware that the plastics used in constructing the dehumidifiers were not compliant with UL 94 and UL 474.

54. In this meeting, Larry Lam and engineer Ju admitted that Gree China knowingly submitted test sample dehumidifiers to UL which did not comply with UL 94 and UL 474 because Gree China knew that UL relied on manufacturers to test their products for UL 94 burn

rate compliance and that UL would not conduct independent burn rate testing on Gree China's dehumidifiers.

55. At the conclusion of the meeting, Gree China, Gree USA, MJC and Gree Hong Kong agreed not to recall their defective products, or to report the defective design and defective materials issues to the CPSC, its retail customers or the general public to avoid adverse publicity and loss of sales.

56. The decision not to recall their defective products was based on the instructions given from Gree China and Gree Hong Kong to Gree USA and MJC.

57. As part of this decision, Gree China and Gree Hong Kong wanted to delay any recall until 2013 so that Gree China could continue to capture market share and sales and so that Gree China had time to change its manufacturing lines and supply chains to incorporate the design changes and then to use fire resistant materials.

58. From September of 2012 until November/December of 2012, Gree USA and MJC continued to receive consumer complaints of overheating and fires caused by their dehumidifiers.

59. In response to the growing concerns over product safety, Gree USA and MJC placed a temporary hold on sales of dehumidifiers to retailers and warehoused thousands of dehumidifiers.

60. In December of 2012 or January of 2013, after Gree China and Gree Hong Kong insisted and pressured MJC and its officers and directors, Gree USA, MJC and Gree USA released the temporary hold on sales of dehumidifiers to the retailers.

61. As part of MJC and Gree USA's agreement with Gree China and Gree Hong Kong to release the temporary hold, Gree China agreed to defend and indemnify MJC for any losses.

62. Gree China, Gree Hong Kong, Gree USA and MJC continued to sell their defective and unreasonably dangerous dehumidifiers until September of 2013, when the dehumidifiers were recalled pursuant to a voluntary recall program with the CPSC.

## **THE RECALL AND CIVIL PENALTY IMPOSED BY THE CPSC**

63. On September 12, 2013, the CPSC announced that Gree China manufactured dehumidifiers were being recalled because of serious fire and burn hazards.

64. The September 12, 2013 CPSC notice announced that Gree China, Gree Hong Kong, Gree USA and MJC were recalling 2,200,000 dehumidifiers sold from January 2005 through August of 2013 involving the following brand names: Danby, DeLouhgi, Fedders, Fellini, Frigidaire, Gree, Kenmore, Norpole, Premiere, Seabreeze, SoleusAir, and SuperClima.

65. In January of 2014, the recall was expanded to include 300,000 GE brand dehumidifiers that had been manufactured by Gree China and sold by Gree China to GE between January of 2008 and December of 2010.

66. The recall was re-announced on May 15, 2014 due to a significant increase in the number of overheating events and fires caused by the dehumidifiers.

67. In the months between September of 2013 and May of 2014, the number of overheating dehumidifiers increased from 171 to 471.

68. In the months between September of 2013 and May of 2014, the number of fires almost tripled from 46 to 121.

69. As of May of 2015, only 240,000 dehumidifiers have been returned by customers and approximately 2,260,000 remained in US residences.

70. In response to information provided to the CPSC, the CPSC instituted a civil penalty investigation against Gree China, Gree Hong Kong and Gree USA.

71. The civil penalty investigation alleged that the defendants a) knowingly failed to report a defect and unreasonable risk of serious injury to the CPSC; b) knowingly made misrepresentations to CPSC staff during its investigation; and c) knowingly sold dehumidifiers bearing the UL safety certification mark knowing that the dehumidifiers did not meet UL flammability standards.

72. On or about March 14, 2016, Gree China, Gree Hong Kong and Gree USA entered a Settlement Agreement with the CPSC ('CPCS/Gree Settlement Agreement").

73. Pursuant to the CPSC/Gree Settlement Agreement, Gree China, Gree Hong Kong and Gree USA admitted that they knew that the dehumidifiers were not complaint with the UL flammability standards and sold, offered to sell, distributed in commerce and imported the dehumidifiers bearing the UL registered safety certification mark the despite knowing that said dehumidifiers were not compliant with UL standards and was not authorized by UL in violation of section 19(a)(12) of the CPSA, 15 U.S.C. § 2068 (a)(12).

74. On March 25, 2016, the CPSC announced that the defendants had agreed to pay a civil penalty of $15,450,000.00 to settle the charges alleged by the CPSC.

75. This civil penalty is a record settlement, with the defendants being the first alleged violators of CPSC rules to reach the per violation maximum imposed by the Consumer Product Safety Improvement Act of 2008.

## COUNT I:  PRODUCT LIABILITY CLAIM

76. Plaintiff hereby incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint as though each were more fully set forth at length herein.

77. Defendants designed, fabricated, manufactured, produced, assembled, distributed, sold, supplied, delivered, and/or placed into the stream of commerce the Williams dehumidifier, which was intended by the defendant to be used by consumers, such as plaintiff's insured.

78. The Williams dehumidifier was defective in its design, formulation, production, construction, creation, assembly, rebuilding, testing and/or marketing when the defendants placed it into the stream of commerce in violation of Indiana Code 34 § 20-4-1 in that the Williams dehumidifier was unreasonably dangerous to the expected consumer or user when used in reasonably expected ways, including but not limited to:

   a) The Williams dehumidifier lacked appropriate warnings and instructions when it was placed into the stream of commerce;

   b) The Williams dehumidifier was defective with respect to the design and operation of the overload protector;

   c) The Williams dehumidifier was defective with respect to the design and manufacture of the plastic materials lacking the appropriate and required fire retardants;

   d) The Williams dehumidifier was defective in that it did not comply with applicable UL standards;

79. The foregoing defects cause the failure of the Williams dehumidifier and the resulting fire, smoke and water damage.

80. Defendants are strictly liable for the above damages.

WHEREFORE, plaintiff hereby demands judgment in its favor and against defendants for damages in an amount in excess of $300,000.00 together with interest, costs of this action and such other and further relief as this Court deems appropriate.

Respectfully submitted,

BY: */s/Katherine O'Malley*
Katherine O'Malley (29032-49)
COZEN O'CONNOR
123 North Wacker Drive
Suite 1800
Chicago, IL 60606
(312) 382-3136 – Phone
(312) 706-9736 – Fax
komalley@cozen.com